EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Supermercado Grande Inc. Aseguradora X <br><br> Recurrido <br><br> v. <br><br> Erick Alamo Pérez <br><br> Peticionario | Certiorari <br><br> 2002 TSPR 116 <br><br> 157 DPR \_\_\_\_ |

Número del Caso: CC-2001-107

Fecha: 12 de septiembre de 2002

Tribunal de Circuito de Apelaciones:
          Circuito Regional VI

Juez Ponente:
          Hon. Carlos Soler Aquino

Abogado de la Parte Peticionaria:

          Lcdo. Luis M. Martínez Rivera

Abogados de la Parte Recurrida:


          Lcdo. Pablo R. Alvarez Sepúlveda
          Lcdo. Jorge L. Aquino Núñez
          Lcda. Ruth E. Aquino García



Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Erick Álamo Pérez

    Peticionario

      v.

Supermercado Grande Inc.
Aseguradora X                      CC-2001-107

    Recurrido

**Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río**

San Juan, Puerto Rico, a 12 de septiembre de 2002.

I

El 27 de octubre de 1999, el Sr. Erick Álamo Pérez (en adelante, "Sr. Álamo" o "el demandante") presentó una demanda en daños y perjuicios por detención ilegal contra la cadena de Supermercados Grande (en adelante, "el Supermercado" o "demandado") y su correspondiente entidad aseguradora, identificada esta última mediante nombre ficticio. Alegó, en síntesis, lo siguiente:

> [l]a parte demandante acudió a las facilidades del Supermercado Grande a efectuar compras. Cuando [...] se disponía a salir de las facilidades de la parte demandada un empleado gerencial se le abalanzó encima acus[á]ndole frente a todas las personas que allí se encontraban de estar hurtando. La parte demandante fue retenido ilegalmente por personal de la parte demandada [,] restringi[é]ndole de ese modo su libertad. Asimismo, la parte

> demandada llamó a la policía todo ello mientras se le restringía su libertad y movimiento ante las personas que allí se hallaban. [Posteriormente,] fue dejado en libertad luego de ser registrado y hallarse que nada había hurtado del establecimiento. La parte demandante fue sometida a todos estos vejámenes frente a las personas que se hallaban y llegaban a las facilidades [de la demandada].[1]

Emplazado el Supermercado el 26 de noviembre de 1999, sin éste haber comparecido oportunamente, el demandante solicitó al Tribunal de Primera Instancia (en adelante, ""TPI") la anotación de rebeldía en su contra y el señalamiento de vista en su fondo.

Así las cosas, luego de que anotó la rebeldía al demandado y celebró la correspondiente vista, el TPI dictó sentencia declarando No Ha Lugar la demanda. Descansó su dictamen en las siguientes determinaciones de hecho:

1. El [Sr. Álamo] durante el mes de marzo se encontraba de compras en el Supermercado Grande de Gurabo. Junto a él se encontraba la secretarias [sic] de la Autoridad de Carre[teras] en Gurabo. Era para la autoridad que estaba haciendo compras.

2. En el Supermercado se encontraba la madre del demandante, Ramonita Pérez Castro. Mientras el demandante salió a ayudar a su madre con los paquetes que llevaba salió el Sr. Núñez, Gerente del Supermercado [,] y lo agarró y le registró los pantalones. Le dijo que le diera los artículos que tenía.

3. El demandante se sintió amenazado. Se puso nervioso. Lo ocurrido le pareció una eternidad. [Luego s]alió un empleado del Supermercado que conocía al demandante y le dijo a

---

[1] Apéndice del recurso de *certiorari*, págs. 35-36.

Núñez que él no era. En el lugar había más personas.

4. Donde trabajaba el demandante se murmuró que lo habían cogido robando en el Supermercado y que lo habían botado por eso.[2]

Entendió el TPI que la prueba desfilada no estableció, mediante preponderancia, una causa de acción por detención ilegal, toda vez que no se probó que el demandado tuviese la intención de producir la detención ilegal o tuviese certeza sustancial de que sus actos la producirían; ni que actuara irrazonablemente. Igualmente, advirtió que era improcedente el remedio solicitado puesto que en la demanda no se había alegado la fecha de ocurrencia de los hechos, y enmendar las alegaciones de la demanda para conformarla con la prueba desfilada en la vista en rebeldía causaría un manifiesto perjuicio a la parte contraria.[3]

Tras varios incidentes procesales,[4] el Sr. Álamo acudió en alzada ante el Tribunal de Circuito de Apelaciones (en adelante, "TCA"). Sometido el asunto ante el referido foro, éste dictó sentencia confirmando el dictamen recurrido.

Tras un breve análisis sobre el procedimiento estatuido para enmendar las alegaciones de una demanda, el TCA apuntó

---

[2] Sentencia del Tribunal de Primera Instancia de 16 de junio de 2000, a las págs. 1-2. Apéndice del recurso de *certiorari*, págs. 12-13.

[3] Asimismo, acotó que la parte demandante no había justificado el por qué debía permitirse una enmienda a esos efectos en dicha etapa de los procedimientos, ni había establecido la razón para la demora e inacción original en promover la enmienda.

[4] Ante una Moción Solicitando Determinaciones de Hechos Adicionales, y posterior Moción de Reconsideración, presentadas por el Sr. Álamo, el TPI emitió una sentencia enmendada a los efectos de añadir como determinaciones de hecho que, 1) para la fecha de los hechos el demandante era residente del pueblo de Gurabo, donde residía con su madre, y

**continúa...**

---

[4] **...continuación**

2) que luego del incidente, varias personas le indicaron a la madre del demandante que a su hijo lo habían cogido robando en el supermercado. Véase, Sentencia Enmendada del Tribunal de Primera Instancia de 26 de julio

que se había omitido en la demanda la fecha en que ocurrieron los hechos, elemento esencial de la causa de acción en cuestión, a fin de dilucidar si procedía en su contra la defensa de prescripción. Consecuentemente, puntualizó que estando la parte demandada en rebeldía, el demandante no podía suplir con prueba lo que no había alegado en la demanda. Así, concluyó que el TPI había actuado correctamente al negarse a permitir una enmienda a las alegaciones con la prueba presentada en la vista en rebeldía.

Insatisfecho con los referidos dictámenes, el Sr.Álamo presentó recurso de *certiorari* ante este Tribunal, apuntando la comisión de los siguientes errores:

1. Erró el Tribunal de Circuito de Apelaciones al confirmar la sentencia enmendada emitida por el Tribunal de Primera Instancia, [S]ala de Caguas, al determinar que la ausencia de una alegación de tiempo en la demanda consistente en no alegarse en el cuerpo de la demanda la fecha de los hechos acarrea la desestimación de la demanda.

2. Erró el Tribunal de Circuito de Apelaciones al confirmar la sentencia enmendada emitida por el Tribunal de Primera Instancia, [S]ala de Caguas, al determinar que la evidencia desfilada creída por el Tribunal y recogida en ambas Sentencias dictadas no configuran una causa de acción por Detención Ilegal.

Mediante Resolución de 9 de marzo de 2001, expedimos el auto solicitado. Tras varios incidentes procesales,[5] y contando con la comparecencia de las partes, resolvemos.

---

de 2000. Apéndice del recurso de *certiorari*, pág. 8. Posteriormente, dictó Resolución denegando la Moción de Reconsideración.

[5] Tras la concesión de varios términos al demandado, aquí recurrido, para que presentara su correspondiente alegato, éste presentó un escrito solicitando la desestimación del recurso. En síntesis, alegó que nunca fue emplazado conforme a derecho y que nunca presentó alegación responsiva ante el TPI, lo cual entendió no tenía obligación de hacer por carecer dicho foro de jurisdicción sobre su persona. Tras evaluar la referida moción y la réplica presentada por el demandante, aquí peticionario, mediante Resolución de 4 de febrero de 2002, declaramos No Ha Lugar a la

El primer señalamiento de error amerita la evaluación de la normativa correspondiente al trámite en rebeldía de una causa de acción, las alegaciones de una demanda, y el procedimiento para enmendar las mismas. Veamos.

La Regla 45.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, dispone que procederá la anotación de rebeldía "[c]uando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según [lo dispuesto en dichas reglas]." Dicho remedio es operativo tanto para situaciones en las cuales el demandado no cumple con el requisito de comparecer a contestar la demanda y/o a defenderse en otra forma prescrita por ley, no presentando alegación alguna contra el remedio solicitado; como en las que una de las partes en el pleito ha incumplido con algún mandato del tribunal, lo que motiva a éste a imponerle la rebeldía como sanción.

Sobre la primera, sabido es que "[e]l propósito de estar sujeto a esta anotación es como disuasivo contra aquellos que puedan recurrir a la dilación como un elemento de su estrategia en la litigación." J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Ed. Luiggi Abraham, 2000, T. II, pág. 750. Toda vez que el trámite en rebeldía se encuentra cimentado en "la obligación de los tribunales de evitar que la adjudicación de causas se paralicen simplemente por la circunstancia de que una parte opte por detener el proceso de litigación", *Continental Ins. Co., v. Isleta Marina*, 106

---

desestimación solicitada, y le concedimos nuevo término al recurrido para presentar el alegato correspondiente.

D.P.R. 809, 815 (1978), el mismo opera como remedio coercitivo contra una parte adversaria la cual, habiéndosele concedido la oportunidad de refutar la reclamación, por su pasividad o temeridad opta por no defenderse.

Como norma general el trámite en rebeldía tendrá como consecuencia jurídica el que se estimen aceptadas todas y cada una de las materias bien alegadas en la demanda. *Continental Ins. Co. v. Isleta Marina*, supra; *Colón v. Ramos*, 116 D.P.R. 258 (1985). De igual forma, el concepto "materias bien alegadas" se refiere a que en una rebeldía se considerarán admitidos los hechos correctamente alegados. *Continental Ins. Co. v. Isleta Marina*, supra; *Rivera v. Insular Wire Products Corp.*, 140 D.P.R. 912 (1996). Aun en materia de daños y perjuicios es aplicable la norma. Si tales hechos correctamente alegados permiten una conclusión de responsabilidad o negligencia y, además, establecen la relación causal entre la conducta negligente o culposa y el daño sufrido, el tribunal tendrá que darlos como hechos probados.[6]

Ahora bien, de conformidad con la Regla 45.2 (b) de Procedimiento Civil, *supra*, anteriormente hemos expresado que para el descargo por el tribunal de su función adjudicativa de un pleito en rebeldía, "el proceso de formar conciencia judicial exige la comprobación de cualquier aseveración mediante prueba." *Hernández v. Espinosa*, 145 D.P.R. 248, 272 (1998). Es decir, si para que un tribunal pueda dictar sentencia en rebeldía le es necesario comprobar la veracidad de cualquier alegación, o hacer una investigación sobre

---

[6] Cuevas Segarra, *Íd.,* a la pág. 753.

cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas. Véase además, *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563 (1997).[7]

Vemos pues que, el mecanismo provisto para el trámite en rebeldía no priva al tribunal de evaluar si, en virtud de tales hechos, no controvertidos, existe válidamente una causa de acción que amerite la concesión del remedio reclamado. Sobre este particular, en *Rivera v. Insular Wire Products Corp.*, supra, a la pág 931, citando a *Continental Ins. Co. v. Isleta Marina*, supra, recalcamos que "los tribunales no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía." A su vez, añadimos que "un trámite en rebeldía no garantiza, *per se*, una sentencia favorable al demandante; [la parte en rebeldía] no admite hechos incorrectamente alegados como tampoco conclusiones de derecho, ni alegaciones conclusorias." A la luz de lo anterior, la parte que solicita un remedio deberá alegar correctamente los hechos específicos los cuales de su faz sean demostrativos que de ser probados, lo hacen acreedor del remedio reclamado. Será esencial pues, evaluar las alegaciones de la demanda.

En materia de alegaciones de una demanda, las Reglas de Procedimiento Civil, *supra*, recogen el principio de que éstas serán sucintas y sencillas, y basta con que aporten hechos demostrativos que justifiquen la concesión de un remedio.

---

[7] A una parte demandada que ha comparecido previamente le cobija el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los testigos de la parte contraria, impugnar la cuantía de los daños y apelar la sentencia. *Continental Ins. Co. v. Isleta Marina*, supra. Asimismo, la Regla 43.6 de Procedimiento Civil, *supra*, dispone que, no empece la celebración de una vista en rebeldía, una sentencia en rebeldía no será de naturaleza distinta ni podrá conceder más remedios que los que se hayan solicitado en la demanda.

*Banco Central Corp. V. Capitol* Plaza Inc., 135 D.P.R. 760 (1994). Son las alegaciones en la demanda las que deben cumplir con la función de ofrecer una notificación razonable a la parte adversa de la naturaleza y los fundamentos de la reclamación. *Rivera Flores v. Cía. ABC*, 138 D.P.R. 1 (1995). Empero, toda vez que su propósito es el de bosquejar la controversia, de modo que cada parte notifique a la otra, a grandes rasgos, la naturaleza general de sus contenciones, *Colón Vélez v. Latimer*, 125 D.P.R. 109 (1990), éstas se interpretarán de forma conjunta, y liberalmente a favor de la parte demandante o querellante. *Rivera v. Insular Wire Products Corp.*, supra.[8]

En lo pertinente a la controversia de autos, la Regla 7.3 de las de Procedimiento Civil, *supra*, prescribe que "[a] los fines de determinar la suficiencia de una alegación, las aseveraciones de tiempo y lugar son esenciales y recibirán la misma consideración que las demás aseveraciones de carácter esencial."

Teniendo esta normativa en mente, pasemos a aplicarla a la situación ante nos.

III

---

[8] De conformidad con las Reglas 13.1 y 13.2 de Procedimiento Civil, *supra*, cualquier parte podrá enmendar sus alegaciones, una vez en cualquier momento antes de habérsele notificado una alegación respondiente. Si su alegación es de las que no admite alegación respondiente y el pleito no ha sido señalado para juicio, podrá enmendarla en cualquier fecha dentro de los veinte días de haber notificado su alegación. En cualquier otro caso, las partes enmendarán sus alegaciones únicamente con permiso del tribunal o mediante el consentimiento escrito de la parte contraria. Dicho permiso se concederá liberalmente cuando la justicia así lo requiera, aun en etapas avanzadas del procedimiento. *Pérez v. Hosp. La Concepción*, 115 D.P.R. 721 (1984); *Vidal, Inc. v. Suro*, 103 D.P.R. 793 (1975). No obstante, la liberalidad para conceder enmiendas no es ilimitada, está condicionada por un juicioso ejercicio de discreción que ha de ponderar el momento en que se solicitan, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora o inacción original del promovente de la enmienda, y el perjuicio que la misma causaría a la otra parte. *Vidal, Inc. v. Suro*, supra.

La demanda presentada por el Sr. Álamo no incluyó una alegación sobre la fecha en la cual ocurrió la supuesta detención ilegal. Ventilado el caso en rebeldía, dada la incomparecencia del demandado, el TPI determinó que dicha omisión conllevaba la desestimación de la demanda. Por su parte, el TCA entendió que la alegación sobre la fecha de los hechos era esencial para que el demandante probara su causa de acción, a los fines de establecer si la reclamación había sido instada en tiempo y no procedía en su contra la defensa de prescripción. No podemos coincidir con dichos pronunciamientos.

Cierto es que una alegación de tiempo es medular a la procedencia de una causa de acción, pertinente al posible levantamiento de la defensa de prescripción. En consecuencia, su omisión podría conllevar la desestimación de la demanda que no contenga alegación al respecto. Véase, *Rossy v. Tribunal Superior*, 80 D.P.R. 729 (1958); *Ramos v. Pueblo*, 67 D.P.R. 640 (1947). Dicha omisión deberá invocarse, naturalmente, por el demandado.

Ahora bien, sabido es que la prescripción es una defensa afirmativa. *López. v. Gus Lallande*, 144 D.P.R. 774 (1998); *Meléndez v. El Vocero de P.R*, 144 D.P.R. 389 (1997). Ésta hay que plantearla oportunamente, si no, se entiende tácitamente renunciada. *Qume Caribe, Inc. v. Secretario de Hacienda*, res. el 30 de marzo de 2001, 153 D.P.R.____, 2001 TSPR 38, 2001 JTS 41. Como regla general, salvo contadas excepciones, la referida defensa deberá exponerse en la alegación respondiente que se haga contra una reclamación. *Texaco P.R., Inc. v. Díaz*, 105 D.P.R. 248 (1976). En consecuencia, un

demandado al que se le anota la rebeldía renuncia a la oportunidad de levantarla. Véase, *Rodríguez v. Tribunal Superior*, 102 D.P.R. 290 (1974).

A la luz de lo anterior, entendemos que en este caso en particular, era inconsecuente el que la omisión de la fecha de los hechos se hubiese suplido durante la vista en rebeldía toda vez que, conociendo el demandado de la acción en su contra, se cruzó de brazos, renunciando tácitamente a la oportunidad de atacar dicha insuficiencia.[9] Nótese, además, que los hechos ocurrieron en las facilidades del Supermercado, teniendo el demandado medios para constatar la fecha en que tuvieron lugar, y determinar fácilmente si la acción estaba o no prescrita. Estando el Supermercado en rebeldía renunció a levantar la defensa de prescripción, por lo cual, la causa de acción en su contra era ejercitable, independientemente de que como cuestión de hecho estuviese prescrita.[10] Erró el foro recurrido al confirmar la desestimación de la demanda en cuanto a este aspecto.

IV

---

[9] Si bien la Regla 67.1 de Procedimiento Civil, en lo pertinente, dispone que no será necesario notificar a las partes en rebeldía por falta de comparecencia de toda alegación subsiguiente a la demanda original, excepto que la subsiguiente alegación solicite remedios nuevos o adicionales, en cuyo caso se notificara a la parte rebelde en la forma provista para diligenciar emplazamientos, la misma no es aplicable a la controversia de autos en la cual la alegación no pretendía solicitar remedio diferente al inicialmente solicitado.

[10] Nótese, que nuestro sistema de derecho es rogado, por tal razón, exceptuando la defensa sobre falta de jurisdicción sobre la materia, los tribunales *sua sponte* no pueden levantar defensas afirmativas que han sido renunciadas por las partes. El tribunal no puede actuar como abogado del demandado. Véase, *Federación de Pescadores Playa Picúas v. U.S. Inds., Inc.*, 135 D.P.R. 303 (1994).

El segundo señalamiento de error nos mueve a considerar si, conforme a la prueba presentada ante el TPI, se configuró en el caso de autos una causa de acción por detención ilegal.

En *Ayala v. San Juan Racing Corp*, 112 D.P.R. 804 (1982), definimos la causa de acción en daños por detención ilegal, separada de la de persecución maliciosa, como el acto de restringir ilegalmente a una persona contra su voluntad o libertad de acción personal. Allí expresamos que una persona, sea o no funcionario del orden público, puede por sí, o por mediación de otro, detener o causar que se detenga ilegalmente a una persona, en cuyo caso, responderá en daños y perjuicios, si dicha actuación es culposa o negligente.

Se han reconocido como elementos de la causa de acción por detención ilegal los siguientes: la intención de efectuar una restricción a la libertad de la persona; el que haya un acto positivo o afirmativo encaminado a producir la restricción de la libertad; que se produzca la restricción de la libertad del perjudicado; que ésta sea involuntaria; que el perjudicado sea consciente de que se le ha restringido su libertad, y que exista una relación causal adecuada entre el acto de la restricción de la libertad y el daño que reclama el demandante. *Parrilla v. Ranger American of P.R.*, 133 D.P.R. 263 (1993).

Toda vez que la misma se considera una transgresión a la persona y va fundamentalmente dirigida a proteger a los individuos en el disfrute de su derecho de libertad, no se requiere que el perjudicado sea arrestado ni encarcelado; sólo se requerirá la mera interferencia del demandado con la libertad total de movimiento del perjudicado. Véase, *Dobbins*

*v. Hato Rey Psychiatric Hospital*, 87 D.P.R. 30 (1962); *García Calderón v. Galiñanes Hermanos*, 83 D.P.R. 318 (1961). Igualmente, la duración de la detención sólo influirá en el alcance de los daños y perjuicios sufridos, por lo cual una detención momentánea, de ser ilegal, da derecho a una causa de acción. Véase, *Casanova v. González Padín*, 47 D.P.R. 488 (1934). Tampoco es necesario el uso de la fuerza, ni que el detenido ofrezca resistencia violenta.

De otra parte, en cuanto al elemento de intención, éste se define como el deseo o designio de causar cierto resultado inmediato, o elección consciente de un fin. No es indispensable que exista un propósito o un deseo hostil de producir el daño. H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en P.R.,* 2da ed., San Juan, Ed. Luiggi Abraham, 1986. Se requiere pues, que el demandado tenga la intención de producir el acto que constituye la detención ilegal o que tenga la certeza sustancial de que dicho resultado será producido por sus actos, aunque no se los proponga o intente particularmente. De igual forma, puede haber una detención ilegal cuando se intenta detener a una persona y se detiene a otra. Aplicarían entonces las normas sobre intención transferida o "Transfer of Intent ".*Íd.* [11] Sobre este particular, véase, *Hernández v. Fonseca*, 96 D.P.R. 715 (1968).

De otra parte, en relación con el acto positivo o afirmativo encaminado a producir la restricción de la libertad, se requiere un movimiento volitivo por parte del demandado o alguna parte de su cuerpo. No obstante, en algunos

---

[11] Brau del Toro, Íd.

casos, la expresión de meras palabras puede constituir el acto.

Ahora bien, respecto a la controversia de autos, anteriormente hemos expresado que la determinación sobre la procedencia de una acción civil contra la persona particular que efectúa o causa la detención de un ciudadano que no ha cometido delito, ha de depender de criterios de razonabilidad. Sobre este particular, en *Ayala v. San Juan Racing Corp*, supra, a la pág. 816, pronunciamos:

> [e]n la búsqueda de un adecuado balance entre la obligación que toda persona tiene de cooperar en la lucha contra el crimen y el derecho que toda persona tiene a no ser privado ilegalmente de su libertad, el criterio de razonabilidad debe aplicarse a base de las circunstancias de cada caso.[...] [D]ebe recurrirse a la figura del hombre prudente y razonable, el *reasonable man* de la jurisprudencia angloamericana, equivalente al "buen padre de familia" a que se refiere el Derecho civil.

Será, pues, necesario comparar la conducta del demandado con la de un hombre razonable en las mismas circunstancias, lo que conllevará la evaluación de los siguientes factores: la persona del demandado, su edad, preparación intelectual, condiciones morales y sus experiencias previas; la persona del detenido, incluso su edad, apariencia y su comportamiento; conocimiento al momento de los hechos que tuviese el demandado de la persona del detenido y las personas que con él se relacionaban; la conducta sospechosa, incluso la gravedad del delito que ésta pudiera implicar, el lugar, la ocasión, y la frecuencia de dicha conducta. No obstante, cada caso tiene sus peculiaridades que deberán tomarse en cuenta al determinar si

se incurrió en una detención ilegal. *Parrilla v. Ranger American of P.R.*, supra; *Ayala v. San Juan Racing Corp.*, supra.

En el caso de autos, la prueba desfilada y que le mereció crédito al TPI estableció que el Sr. Álamo se encontraba de compras en las facilidades del demandado; que estando su madre allí, el demandante salió a ayudarla con los paquetes que llevaba; que una vez fuera del establecimiento, el Gerente del Supermercado, lo agarró y le registró los pantalones. Le dijo que le diera los artículos que tenía; y que luego salió un empleado del Supermercado que conocía al demandante y le dijo al gerente que él no era [la persona que estaban buscando]. Ante la misma, el TPI concluyó que no se había probado que la demandada tuviese la intención de producir la detención o tuviese certeza sustancial de que el acto perpetrado la produciría; ni de que la demandada hubiese actuado irrazonablemente. Veamos.

Primeramente, forzoso es colegir que sí medió una intención de provocar la detención. No podemos perder de vista que la intención, en materia de daños no equivale necesariamente una intención hostil, o el deseo de causar daño, sino la intención de lograr un resultado que invade los intereses de otra persona en una forma prohibida por ley. Conlleva el conocimiento de que tal resultado se producirá con substancial certeza, aunque no se persiga o desee. Sería absurdo concluir que el gerente del supermercado, al salir de las facilidades en búsqueda del demandante, interceptarlo y

registrarlo, no estaba consciente o no tenía razonable certeza de que sus actos producirían la detención de este último. [12]

De otra parte, se nos hace imposible sostener la razonabilidad de la conducta del demandado al haber procedido como lo hizo. El demandante se encontraba de compras en sus facilidades como cualquier parroquiano; no había desplegado conducta sospechosa alguna. No obstante, su gerente, evidentemente, actuando a base de información suplida por otros empleados del local, sin saber a quién detendría, no sólo lo detuvo, sino que, sin hacerle ningún cuestionamiento ni requerimiento previo, le registró los pantalones, imputándole el delito de apropiación ilegal al requerirle que entregara los artículos que tenía en su posesión. No podemos resguardar este tipo de conducta. El error señalado se cometió.

V

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Circuito de Apelaciones y el del Tribunal de Primera Instancia y se declara con lugar la demanda instada por el Sr. Álamo. Se devuelve el caso al TPI para que celebre una vista para dilucidar la cuantía de los daños.

Se dictará sentencia de conformidad.

Baltasar Corrada del Río
Juez Asociado

---

[12] Nótese que, el demandante fue detenido, simplemente, porque se pensaba que era otra persona. Sobre este particular, a fines ilustrativos, véase, *Morris v. Albertson's Inc.*, 705 F2d 406 (11th Cir. 1983), en el cual se le impuso responsabilidad por detención ilegal a un establecimiento comercial por hechos en los que uno de sus empleados observó a un cliente apropiándose ilegalmente de unos bienes y se lo comunicó a su supervisor, sin embargo, dada la insuficiencia de la descripción, este último detuvo a otro cliente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Erick Álamo Pérez

    Peticionario

       v.

                             CC-2001-107

Supermercado Grande Inc.
Aseguradora X

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 12 de septiembre de 2002.

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Circuito de Apelaciones y el del Tribunal de Primera Instancia y se declara con lugar la demanda instada por el peticionario, Sr. Erick Álamo. Se devuelve el caso al TPI para que celebre una vista para dilucidar la cuantía de los daños.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo